# United States District Court
## IN THE DISTRICT OF COLUMBIA

David Stinecipher
Debra Stinecipher,

                     Plaintiff(s),

v.

United States

                   Defendant.

Case No. **1:05cv02434**

RESPONSE TO MOTION TO
DISMISS -- EXHAUSTION OF
ADMINISTRATIVE REMEDIES

Based upon a history of unsuccessfully seeking answers and agency records providing a basis for such answers, Plaintiff(s) have asserted that they have either exhausted administrative remedies available, or that such administrative remedies are inadequate. In so claiming, Plaintiff(s) seek the Court's exercise of the equity jurisdiction conferred in Section 11 of the Judiciary Act of 1789, 1 Stat. 78.

A court sitting in equity cannot "ignore the judgment of Congress, deliberately expressed in legislation." Virginian R. Co. v. Railway Employees, 300 U. S. 515, 551 (1937).

In defendants' motion, counsel correctly reads § 7433(d)(1) in quoting "a judgment for damages shall not be awarded under [§ 7433] unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."

Counsel correctly reads the regulation governing such administrative remedies, stating: These regulations make clear that an "action for damages filed in federal district

court may not be maintained unless the taxpayer has filed an administrative claim pursuant to . . . this section." Id. § 301.7433-1(a)."

Accepting the regulation as definitive, counsel states "Failure to comply...deprives the federal district court of jurisdiction. See Venen v. United States, 38 F.3d 100, 103 (3d Cir. 1994); McGuirl v. United States, 360 F. Supp. 2d 125, 128 (D.D.C. 2004)."

With all due respect, the history of IRC section 7433 shows that Venen was correctly decided under TBOR I's express proscription.   The current regulation, upon which McGuirl was decided, and upon which the instant case hinges, is an unreasonable interpretation of the current statutory provision; exceeds the authority of the current statutory provision by impermissibly extending the operation of the exhaustion requirement; and, by frustrating Congress' intent in creating, and amending, 7433; and by effectively converting a "7433 damages" claim into a "7422 refund" claim.

The history, i.e., the evolution of Congress' language, shows that Congress, in proscribing a damages award absent the Court's own satisfaction with respect to administrative exhaustion - without reinstating TBOR I's express proscription - left the court's equity jurisdiction intact.

### HISTORY OF 7433  Taxpayer Bill of Rights (TBOR I)

Congress inserted 7433 into the Internal Revenue Code in the Taxpayer Bill of Rights.   Although Plaintiff(s) have been unable to find the actual Act of Congress, a comprehensive discussion was published by the American Bar Association:

> "Section 7433 also removes tax collection controversies between taxpayers and the IRS from the jurisdiction of federal courts and places them in the IRS administrative bureaucracy. Section 7433(d) requires taxpayers to exhaust their administrative remedies before filing section 7433 actions in district court. In 1996, the Taxpayer

Bill of Rights 2 (TBOR 2) eliminated the exhaustion requirement, permitting district courts to hear section 7433 claims provided that damage awards are reduced when the claimant does not exhaust administrative remedies."

The Bar is correct regarding the 1996 amendment.

### HISTORY OF 7433  Taxpayer Bill of Rights II (TBOR II)

PUBLIC LAW 104-168 (JULY 30, 1996) 110 STAT. 1453, entitled "An Act To amend the Internal Revenue Code of 1986 to provide for increased taxpayer protections," TBOR II's Title VIII, SEC. 802 amended Paragraph (1) of section 7433(d) to read:

"The amount of damages awarded under subsection (b) may be reduced if the court determines that the plaintiff has not exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."

The Bar then opined that

"However, Congress reinstated the exhaustion requirement in the 1998 Act."

The Bar is not precisely correct in this assertion. TBOR III, found in the IRS Restructuring and Reform Act of 1998, Pub. L 105-206 (RRA '98), struck a delicate balance between TBOR I's "absolutely not" provision and TBOR II's "judgment may be reduced" amendment. Section 7433, as re-amended by TBOR III, is underlined silent with respect to bringing or maintaining a 7433 action. The revision states no more than "...no judgment shall be awarded..." unless the Court is satisfied that administrative remedies available have been exhausted.   7433, in its current incarnation, neither prohibits, nor precludes, equitable relief. To paraphrase the Bar, 7433 now permits "district courts to hear section 7433 claims provided that..." in the absence of the Court's satisfaction as to administrative exhaustion, "...no judgment shall be awarded...".

Before proceeding to the issue of the Court's equity jurisdiction, I respectfully direct

the Court's attention to what the Bar had to say about the re-amendment:

"Congress should not have re-imposed the exhaustion provision. Many plaintiffs bring their actions to federal court under section 7433 because they do not trust the IRS to seriously consider their claims. Furthermore, most pro se plaintiffs do not understand the meaning of exhaustion of administrative remedies. These plaintiffs should not be penalized by their good-faith ignorance; instead, federal courts should hear their claims if valid. In addition, few pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. Congress should understand many people's distrust of the ability of the IRS to proceed with their claims..."

As discussed below, the Bar's recognition that "few pro se plaintiffs have actual notice of the process" is but one of many reasons the Court should exercise its equity powers.

## DISTRICT COURT IS A COURT OF EQUITY

The Judiciary Act of 1789 conferred on the federal courts jurisdiction over "all suits . . . in equity." 1 Stat. 78.  Section 11 provided that the circuit courts should have "cognizance . . . of all suits of a civil nature at common law or in equity" in cases appropriately brought in those courts. This provision is perpetuated in § 24(1) of the Judicial Code, 28 U.S.C. § 41(1), which declares that the district courts shall have jurisdiction of such suits.  Substantially, then, the equity jurisdiction of the federal courts is the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789 (1 Stat. 73). Atlas Life Ins. Co. v. W. I. Southern, Inc., 306 U.S. 563, 568 (1939). See also, e.g., Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 382, n. 26 (1949); Guaranty Trust Co. v. York, 326 U.S. 99, 105 (1945); Gordon v. Washington, 295 U.S. 30, 36 (1935). The substantive prerequisites for obtaining an equitable remedy as [527 U.S. 319] well as the

general availability of injunctive relief are not altered by [Rule 65] and depend on traditional principles of equity jurisdiction. A. Dobie, Handbook of Federal Jurisdiction and Procedure 660 (1928).

Federal equity is a separate legal system. Guaranty Trust Co. v. York, 326 U.S. 99, 105 (1945). The "jurisdiction" thus conferred on the federal courts to entertain suits in equity is an authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries. Payne v. Hook, 7 Wall. 425, 430; In re Sawyer, 124 U.S. 200, 209-210; Matthews v. Rodgers, 284 U.S. 521, 525; Gordon v. Washington, 295 U.S. 30, 36. This clause of the statute does not define the jurisdiction of the district courts as federal courts, in the sense of their power or authority to hear and decide, but prescribes the body of doctrine which is to guide their decisions and enable them to determine whether, in any given instance, a suit of which a district court has jurisdiction as a federal court is an appropriate one for the exercise of the extraordinary powers of a court of equity. Atlas Life Ins. Co. v. W. I. Southern, Inc., 306 U.S. 563, 568 (1939), citing Massachusetts State Grange v. Benton, 272 U.S. 525, 528; Pennsylvania v. Williams, 294 U.S. 176, 181, and cases cited.{1} [306 U.S. 569]

## WHY THE COURT SHOULD EXERCISE ITS EXTRAORDINARY POWERS

Subject-matter jurisdiction presents a threshold question. Federal courts of limited jurisdiction have only the power to hear those cases over which Congress has conferred subject-matter jurisdiction upon them. In this case, the district court has subject-matter jurisdiction pursuant to 7433; the sole limitation in the current provision is whether the

Court may grant judgment in favor of the Plaintiff(s) without first satisfying itself that Plaintiff(s) have exhausted administrative remedies "available". While administrative remedies are called for in 7433, it is the "availability" of those remedies upon which the limitation rests.

Based upon the language of the regulation itself, and upon repeated agency actions of the Internal Revenue Service demonstrating disregard of governing statutes, regulations, and Service policies, Plaintiff(s) contend that the administrative "remedies" purportedly provided for - as implemented by regulation - are at best unavailable, and at worst, wholly inadequate.

## AVAILABILITY OF REMEDY

As shown in Title 26 of the Code of Federal Regulations, IRS failed to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I. Treasury Deccision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and might not have been effective until February 18, 1992.

In respect of Congress' removal of the jurisdictional prohibition in TBOR II, it appears that IRS failed to amend the regulation to reflect Congress' intent at all.

It is clear, however, that the current regulation, as amended by T.D. 9050, 68 FR 14320, was not promulgated until March 25, 2003, more than four years and nine months after Congress' re-amendment in TBOR III. This period of "unavailability" of administrative remedy provides the context in which the March 25, 2003 version of the regulation re-implements TBOR I's administrative exhaustion requirement. IRS intends

not to be sued.

To show that the above history accurately reflects IRS intent, the Court's attention is respectfully directed to IRS policy regarding return of amounts unlawfully collected.

Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, is to refrain from returning amounts unlawfully collected.  P-5-36 states:

"(1)    Returning money wrongfully collected: This Policy Statement has been revoked."

Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might have existed was revoked.  The administrative remedy of filing a claim to recover unlawfully collected amounts is clearly unavailable when the Service Policy on such matters has been revoked.

## THE REGULATION IS AN UNREASONABLE INTERPRETATION

The current regulation requires that an injured Citizen wait up to six months for a ruling on an administrative claim before bringing a civil suit.  This half-year waiting period is extreme.  In the context  for which the provision was created, this is tantamount to a complete frustration of Congress' intent.  Few people, if any at all, could withstand the six month period for reasons known to, and published by, the National Taxpayer Advocate. SEE:  excerpts from NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, below.

## THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE

In construing 7433's current incarnation, the starting point must be the language employed by Congress. See: Reiter v Sonotone Corp., 442 US 330, 337, 60 L Ed 2d 931,

99 S Ct. 2326 (1979) and the courts must assume that the legislative purpose is expressed by the ordinary meaning of the words used. Richards v United States, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962). 7433's current language must ordinarily be regarded as conclusive, Consumer Product Safety Comm'n v GTE Sylvania, Inc., 447 US 102, 108, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), and unless Congress has clearly indicated that its intentions are contrary to the words it employed in the statute, this is the ending point of interpretation. Fuller v. United States, 615 F. Supp. 1054 (D.C. Cal 1985; quoting Richards v. United States, supra.

7433's current language merely restricts an award of damages unless the Court is satisfied that administrative remedies, shown by Service Policy P-5-36, above, to be essentially unavailable absent judicial intervention, have been exhausted.

Yet the regulation quoted by the Court states that "...no suit may be maintained..." in the absence of administrative exhaustion. This is the language that Congress expressly removed from 7433 in TBOR II; that more restrictive language was omitted from the TBOR III re-amendment restricting award of judgment. It must be assumed that Congress, in omitting TBOR I's more restrictive language from TBOR III's re-amendment, intended that omission.

As stated by the Supreme Court in Morton v. Ruiz, 415 U.S. 199 (1974): The agency power to make rules that affect substantial individual rights and obligations carries with it the responsibility not only to remain consistent with the governing legislation, FMC v. Seatrain Lines, Inc., 411 U.S. 726 (1973); Dixon v. United States, 381 U.S. 68, 74 (1965); Brannan v. Stark, 342 U.S. 451 (1952), but also to employ procedures that conform to the

law. See NLRB v. Wyman-Gordon Co., 394 U.S. 759, 764 (1969) (plurality opinion). Lack of specific attention to the statutory authorization is especially important in light of the Supreme Court's pronouncement in Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944), quoted in Adamo Wrecking Co. v. United States, 434 U.S. 275, 287 n. 5 (1978), and cited in SEC v. Sloan, 436 U.S. 103 (1978), specifying that factors to be considered in giving weight to an administrative ruling include "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." SEC v. Sloan, 436 U.S. 103, 117-118.

The regulation itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness...in its consideration" (Sloan). In 301.7433-1's subsection (a), paragraph (1), "reckless or intentional actions" is changed; one must have "...damages sustained as a proximate result of the reckless or international actions..." (emphasis added).

To the extent that Treasury Decision 9050 "re-imposes" the more restrictive language of TBOR I, the regulation exceeds the authority of 7433 in its current form. To the extent that Treasury Decision 9050 re-imposes the prohibition of TBOR I, the regulation fails to remain consistent with the governing legislation; and fails "all those factors which give it power to persuade."

### REGULATION CONVERTS DAMAGES ACTION INTO REFUND ACTION

By requiring that Plaintiff(s) (claimants) place a specific value upon injuries claimed, the regulation effectively neuters the statutory provision in instances where, as alleged in

Plaintiff(s) complaint, the threshold issue of whether an assessment has been properly made is raised. If IRS refuses to investigate that threshold issue, IRS denies a meaningful Collection Due Process Hearing; a "collection" might not yet have occurred, yet Plaintiff(s) right to challenge the existence of the underlying liability - established in the statutory provision (6330(c)(2)(B)) - is thwarted.

Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions. National Labor Relations Board v. Brown, 380 U.S. 278, 291-292.

## THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and RRA '98 are testaments of Congress' awareness that IRS cannot be trusted to administer the tax code without supervision. Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford DeLong, now a Professor at Berkeley,

> "The IRS's comparative advantage is using random terror to elicit voluntary compliance with the tax code...".

Congress intended that Citizens harmed by IRS' legendary disregard of governing statutes and regulations have an avenue to be made whole under section 7433, albeit with a prior administrative review. Once again, the key is availability of the administrative remedy. Availability can be likened to adequacy. As a matter of broad administrative law, if administrative remedy is inadequate, it need not be pursued.

The Morton Court supra, opined, at 235:

Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required. Service v. Dulles, 354 U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959).

As established in the Code of Federal Regulations, IRS refused to even establish procedures for four years after the right to bring an action was granted by Congress, and currently imposes a prohibitive provision omitted by Congress. Administrative remedy, available in form, is unavailable in substance.

The Court will note that Plaintiff(s) alleged in paragraph 7 of the Complaint numerous failures of IRS to comply with governing statutes, regulations, and policies. These allegations, for purposes of motion to dismiss, have been admitted.   By way of example only, one of the allegations in the Complaint's paragraph 7 is that no review with respect to lien or levy was made in accordance with Section 3421 of RRA 98, excerpted here:

SEC. 3421. <<26 USC 6301 note>> APPROVAL PROCESS FOR LIENS, LEVIES, AND
   SEIZURES.
   (a) In General.--The Commissioner of Internal
Revenue shall develop and implement procedures under which--
       (1) a determination by an employee to file a notice of lien
       or levy with respect to, or to levy or seize, any property or
       right to property would, where appropriate, be required to be
       reviewed by a supervisor of the employee before the action was
       taken; and
       (2) appropriate disciplinary action would be taken against
       the employee or supervisor where the procedures under paragraph
       (1) were not followed.

   (b) Review Process.--The review process under subsection (a)(1) may
include a certification that the employee has--
       (1) reviewed the taxpayer's information;

(2) verified that a balance is due; and

(3) affirmed that the action proposed to be taken is appropriate given the taxpayer's circumstances, considering the amount due and the value of the property or right to property.

(c) Effective Dates.--

(1) In general.--Except as provided in paragraph (2), this section shall take effect on the date of the enactment of this Act.

(2) Automated collection system actions.--In the case of any action under an automated collection system, this section shall apply to actions initiated after December 31, 2000.

The defendant has admitted this allegation.

Yet another example is the allegation that IRS failed to afford a meaningful

Collection Due Process Hearing as mandated by RRA 98's section 3401, excerpted here:

SEC. 3401. DUE PROCESS IN INTERNAL REVENUE SERVICE COLLECTION ACTIONS.
***

"PART II--LIENS".

(b) Notice and Opportunity for Hearing Before Levy.--Subchapter D of chapter 64 (relating to seizure of property for collection of taxes) is amended by inserting before the table of sections the following:

"Part I.  Due process for collections.
"Part II.  Levy.

"PART I--DUE PROCESS FOR COLLECTIONS

"Sec. 6330. Notice and opportunity for hearing before levy.

"SEC. 6330. NOTICE AND OPPORTUNITY FOR HEARING BEFORE LEVY.

***

"(c) Matters Considered at Hearing.--In the case of any hearing conducted under this section--

"(1) Requirement of investigation.--The appeals officer

shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.

"(2) Issues at hearing.--

"(A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--

"(i) appropriate spousal defenses;

"(ii) challenges to the appropriateness of collection actions; and

"(iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

"(B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

"(3) Basis for the determination.--The determination by an appeals officer under this subsection shall take into consideration--

"(A) the verification presented under paragraph (1);

"(B) the issues raised under paragraph (2); and

"(C) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary.

"(4) Certain issues precluded.--An issue may not be raised at the hearing if--

"(A) the issue was raised and considered at a previous hearing under section 6320 or in any other previous administrative or judicial proceeding; and

[[ 112 STAT. 749]]

"(B) the person seeking to raise the issue participated meaningfully in such hearing or proceeding. This paragraph shall not apply to any issue with respect to which subsection (d)(2)(B) applies.

"(d) Proceeding After Hearing.--
    "(1) Judicial review of determination.--The person may,
within 30 days of a determination under this section, appeal
such determination--
        "(A) to the Tax Court (and the Tax Court shall have
    jurisdiction to hear such matter); or
        "(B) if the Tax Court does not have jurisdiction of
    the underlying tax liability, to a district court of the
    United States.
If a court determines that the appeal was to an incorrect court,
a person shall have 30 days after the court determination to
file such appeal with the correct court.

The "impartial hearing officer" failed to "obtain verification" in accordance with the

statute, as that requirement was explained by IRS Chief Counsel in Collection Bankruptcy

and Summons Bulletin No. 487, published by the IRS Office of Chief Counsel in April 2001:

> "I.R.C. § 6330(c)(1) requires the Appeals officer to "obtain verification from the
> Secretary that the requirements of any applicable law or administrative procedure
> have been met." This provision and the regulations make clear that it is not the
> Appeals officer but the IRS office or officer pursuing collection that is required to
> provide the verification. See Temp. Treas. Reg. §§ 301.6320-1T(e)(1) and
> 301.6330-1T(e)(1). The legislative history reinforces this interpretation: "During the
> hearing, the IRS is required to verify that all statutory, regulatory, and administrative
> requirements for the proposed collection action have been met." H. Rep. 105-599,
> 105th Cong., 2d Sess., p. 264. I.R.C. § 6330(c)(3)(A) requires the Appeals officer
> in making his or her determination as to the appropriateness of the collection action
> to "take into consideration" this verification. Temp. Treas. Reg. §§
> 301.6320-1T(e)(3), Q&AE1 and 301.6330-1T(e)(3), Q&A-E1 reinforce the statutory
> language by stating that "Appeals will consider the following matters in making its
> determination: (i) Whether the IRS met the requirements of any applicable law or
> administrative procedure." The Manual, consistent with the statute and temporary
> regulation, requires that the Appeals officer document, in a case memorandum and
> in the attachment to the Notice of Determination, that he or she obtained
> "verification from the Service that the requirements of any applicable law or
> administrative procedures have been met." IRM 8.7.1.1.9.11(8)." (emphases added)

The "impartial hearing officer" failed to investigate, let alone verify, the existence of

the alleged underlying liability. SEE: Admitted Allegations Provide More Evidence of

Unclean Hands, below.

IRS has also violated numerous Service policies made enforceable by section

1203(b) of RRA 98, the relevance of which is discussed immediately below the Service

Policies listed.

With respect to Plaintiff(s), IRS has disregarded Service Policy P-1-1, Mission of the

Service:

> (1)    Mission of the Service: Provide America's taxpayers top quality service by
> helping them understand and meet their tax responsibilities and by applying the tax
> law with integrity and fairness to all.
>
>                                                        IRM 1.2.1.2.11


Despite Plaintiff(s) repeated efforts to gain an understanding of their responsibilities

through examination of IRS records, defendant's agent has failed to comply with Service

Policy.

> IRS has disregarded Service Policy P-5-2

> (1)    COLLECTING PRINCIPLES: All our decisions about collecting must be
> guided by these principles. To the extent that they are, we will succeed in our
> mission.
> (2)    SERVICE AND ASSISTANCE-All taxpayers are entitled to courteous,
> responsive, and effective service and assistance in all their dealings with the
> Service. We will actively assist taxpayers who try to comply with the law, and work
> to continually improve the quality of our systems and service to meet the needs of
> our customes. All taxpayers, whether delinquent or fully compliant, are entitled to
> prompt and professional service whenever they deal with Service employees.
> (3)    TAXPAYER RIGHTS-We will observe taxpayers' rights, including their rights
> to privacy and to fair and courteous treatment. This affirms our commitment to
> observe both the spirit as well as the letter of all legal requirements, including the
> Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998.
> Taxpayers will be protected from unauthorized disclosure of information.
> (4)    COMPLIANCE-The public trust requires us to ensure that all taxpayers
> promptly file their returns and pay the proper amount of tax, regardless of the
> amount owed: The public as a whole is our customer, not just delinquent taxpayers.
> Our customers expect us to promote voluntary compliance by ensuring that all
> promptly pay their fair share. Employees should work with taxpayers to meet all their
> filing and paying requirements, not only the delinquency at hand. This involves

identifying and addressing non-compliance to prevent future delinquencies. All types of taxpayers (individual and business) who fail to timely file their returns or pay their fair share of taxes must resolve both current and delinquent taxes to be considered compliant.

(5)    CASE RESOLUTION-While we will actively assist taxpayers to comply, we will also take appropriate enforcement actions when warranted to resolve the delinquency. To resolve a case, good judgment is needed to make sound decisions on the appropriate action needed: All taxpayers are required to pay by the due date of the return. From a broad range of collecting tools, employees will select the one(s) most appropriate for each case. Case resolution, including actions such as: lien, levy, seizure of assets, installment agreement, offer in compromise, substitute for return, summons, and IRC 6020(b), are important elements of an effective compliance program. When it is appropriate to take such actions, it should be done promptly, yet judiciously, and based on the facts of each case.

1.2.1.5.2

By failing to assist Plaintiff(s) in our attempts to comply with the law, defendant's agent has failed to comply with Service Policy.

IRS has disregarded Service Policy P-5-16

(1)    Forbearance when reasonable doubt exists that assessment is correct: Whenever a taxpayer raises a question or presents information creating reasonable doubt as to the correctness or validity of an assessment, reasonable forbearance will be exercised with respect to collection provided (1) adjustment of the taxpayer's claim is within control of the Service, and (2) the interests of the Government will not be jeopardized.

IRM 1.2.1.5.3

Despite Plaintiff(s) repeated efforts to verify any claim of obligation through examination of IRS assessment records, defendant's agent has failed to comply with Service Policy.

IRS has disregarded Service Policy P-5-34

(1)     Collection enforced through seizure and sale of the assets occurs only after thorough consideration of all factors and of alternative collection methods: The facts of a case and alternative collection methods must be thoroughly considered before determining seizure of personal or business assets is appropriate. Taxpayer rights must be respected. The taxpayer's plan to resolve past due taxes while staying current with all future taxes will be considered. Opposing considerations must be carefully weighed, and the official responsible for making the decision to seize must be satisfied that other efforts have been made to collect the delinquent taxes without seizing. Alternatives to seizure and sale action may include an installment agreement, offer in compromise, notice of levy, or lien foreclosure. Seizure action is usually the last option in the collection process.

(2)     All seizures will be approved by the Chief, Collection Division, with other specific seizures also requiring District Director, Assistant District Director, or Counsel approval, or court order.

1.2.1.5.7

IRS has disregarded Service Policy P-5-47

(1)     Notices of lien generally filed only after taxpayer is contacted in person, by telephone or by notice: *** All pertinent facts must be carefully considered as the filing of the notice of lien may adversely affect the taxpayer's ability to pay and thereby hamper or retard the collection process.

(2)     *****.

(3)     Other notice of lien filing requirements: A notice of lien must be filed:

1.     prior to instituting levy action on property in possession of the taxpayer; and

2.     prior to service of final demand for payment if there is reasonable probability that suit may later be instituted.

IRM 1.2.1.5.13

By issuing a Notice of Levy prior to filing a notice of lien, defendant's agent has

failed to comply with Service Policy.

IRS has disregarded Service Policy P-6-20

(1)     Information provided taxpayers on the application of the tax law: The Service will develop and conduct effective programs to make available to all taxpayers comprehensive, accurate, and timely information on the requirements of tax law and regulations.

(2)     Positive efforts will be made to determine taxpayers' needs and to effectively meet these needs. Information will be provided through a variety of means, including telephone and office assistance programs, mass media and taxpayer publications.

IRM 1.2.1.6.7

By refusing Plaintiff(s) requests for comprehensive, accurate, and timely information

on the requirements of tax law and regulations, defendant's agent has failed to comply with

Service Policy.

IRS has disregarded Service Policy P-6-21

(1)    Educational programs provided: The Service will conduct taxpayer education programs for taxpayers whose needs for tax information are most effectively met by these means.
(2)    These educational programs will include those established to assist individuals in meeting their current and future tax obligations, as well as programs designed to instruct groups of taxpayers or prospective taxpayers on their rights and responsibilities under the tax law or on specific tax provisions of common interest.

1.2.1.6.8

By failing to instruct groups of taxpayers or prospective taxpayers on rights and

responsibilities under the tax law or on specific tax provisions, defendant's agent has failed

to comply with Service Policy.

IRS has disregarded Service Policy P-10-42

(1)    All bona fide complaints or allegations will be investigated: An investigation will be made of all bona fide complaints or allegations of misconduct or irregularities concerning Service officials or employees and in certain instances investigations may be made of non-Service personnel when their actions may affect the integrity of the Service.

IRM 1.2.1.10.4

By refusing to investigate Plaintiff(s) complaints or allegations of misconduct or

irregularities, defendant's agent has failed to comply with Service Policy.


Particularly relevant to the instant case, Service Policy P-5-2(3) purports a

"commitment to observe both the spirit as well as the letter of all legal requirements,

including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of

1998", yet no IRS publication, publicly available, notifies Citizens of the right to pursue

damages under section 7433, let alone any reference to administrative procedures.

## CLEAN HANDS DOCTRINE

As an example of IRS' unclean hands, Plaintiff(s) provide this excerpt from the

NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS

EXECUTIVE SUMMARY:

THE MOST SERIOUS PROBLEMS ENCOUNTERED BY TAXPAYERS

6. Levies on Social Security Payments. In general, recipients of Social Security benefits are elderly or disabled workers, or the surviving dependents of deceased workers. The IRS continues to process levies on Social Security payments without sufficient managerial review, causing undue burden on a vulnerable population of taxpayers. The National Taxpayer Advocate urges the IRS to implement safeguards that would prevent levies from being imposed on Social Security payments to low income and other at-risk taxpayers.

7. Appeals Campus Centralization. The IRS Office of Appeals ("Appeals") has centralized its work on certain types of cases at six IRS campuses; these cases previously were resolved in field offices closer to taxpayers. Appeals campus centralization is aimed at decreasing the time it takes for a taxpayer to resolve a case. While this aim is appropriate and admirable, the National Taxpayer Advocate is concerned that centralizing Appeals case resolution may actually increase taxpayer burden. Centralization may reduce opportunities for taxpayers to have their cases resolved at the local level, diminish working relationships between taxpayers and Appeals employees, increase emphasis on processing at the expense of independent judgment, and diminish service for low income and unrepresented taxpayers. The National Taxpayer Advocate urges Appeals to alleviate these problems and protect taxpayers' appeal rights by developing specific training that will help employees carry out Appeals' independent mission in the campus environment. We recommend that Appeals monitor campus activity to ensure that taxpayers - particularly low income taxpayers - receive full and fair consideration of their cases and are adequately notified of their right to request a case transfer to a local Appeals office.

11. Automated Collection System Levy Releases. Collection efforts through the IRS's Automated Collection System (ACS) can result in levies of bank accounts, wages, or other income such as Social Security. In response to these levies, taxpayers will contact the IRS seeking to enter into a collection alternative, such as an installment agreement. The IRS can also designate an account as "currently not collectible" if the taxpayer can demonstrate a financial hardship. The Internal

Revenue Code and Treasury Regulations require that the IRS promptly release levies when taxpayers enter into installment agreements or when they demonstrate the existence of a hardship. Some taxpayers encounter problems with the levy release, including clerical errors, delays that result in additional levies on taxpayer assets or income, or the IRS not returning levy proceeds when a delayed levy release results in additional levies. Delays are also due in part to taxpayers' failure to request expedited levy releases so that the release can be faxed to the third party levy source. The IRS has improved the levy release process for currently-not-collectible accounts and has agreed to consider similar system changes for installment agreements, and require additional training for employees. We encourage the IRS to consider revising its procedures so that all levy releases are assumed to require expedited procedures.

15. Mandatory Briefings for IRS Employees on TAS. Internal Revenue Code § 7803(c)(2)(C)(ii) requires the National Taxpayer Advocate to develop guidance for all IRS officers and employees, outlining the criteria for referral of cases to the Taxpayer Advocate Service (TAS). The IRS has denied the request of the National Taxpayer Advocate to include TAS training among its annual mandatory briefings for all employees. Instead, the IRS has agreed to provide TAS training to contact employees in the Wage and Investment and Small Business/Self-Employed operating divisions on a one-time basis, and urges TAS to train the rest of the employees through methods such as the IRS intranet, inserts in employee Earnings & Leave statements, and "wallet cards." The National Taxpayer Advocate urges the IRS to rethink its position and grant her request to make TAS training mandatory for all employees.

Based upon the foregoing opinion of the National Taxpayer Advocate, and the admitted allegations in Plaintiff(s) Complaint, IRS, and the Principal for which it operates, comes with unclean hands, and the United States should not now be allowed to invoke administrative provisions to preclude having to answer for IRS' willful disregard.

### SERVICE POLICIES ARE ENFORCEABLE

Many, if not all of the "disregards" alleged, and admitted, are grounds for termination of employment of the offending personnel.  RRA 98 section 1203(b) is excerpted:

1203(b) Acts or Omissions.--The acts or omissions referred to under subsection (a) are--
(1) willful failure to obtain the required approval
signatures on documents authorizing the seizure of a taxpayer's
home, personal belongings, or business assets;

(2) providing a false statement under oath with respect to
a material matter involving a taxpayer or taxpayer representative;

(3) with respect to a taxpayer, taxpayer representative, or
other employee of the Internal Revenue Service, the violation
of--

(A) any right under the Constitution of the United
States; or

(B) any civil right established under--

(i) title VI or VII of the Civil Rights Act of
1964;

(ii) title IX of the Education Amendments of
1972;

(iii) the Age Discrimination in Employment Act
of 1967;

(iv) the Age Discrimination Act of 1975;

(v) section 501 or 504 of the Rehabilitation
Act of 1973; or

(vi) title I of the Americans with
Disabilities Act of 1990;

(4) falsifying or destroying documents to conceal mistakes
made by any employee with respect to a matter involving a
taxpayer or taxpayer representative;

(5) assault or battery on a taxpayer, taxpayer
representative, or other employee of the Internal Revenue
Service, but only if there is a criminal conviction, or a final
judgment by a court in a civil case, with respect to the assault
or battery;

(6) violations of the Internal Revenue Code of 1986,
Department of Treasury regulations, or policies of the Internal
Revenue Service (including the Internal Revenue Manual) for the
purpose of retaliating against, or harassing, a taxpayer,
taxpayer representative, or other employee of the Internal
Revenue Service;

Yet, to the extent of Plaintiff(s) knowledge and belief, no IRS agent has been
terminated for misconduct. Instead, Congress' good faith has been abused, and offenders
have instead been transferred under authority of section 1203(c), excerpted here:

(c) Determination of Commissioner.--

(1) In general.--The Commissioner of Internal Revenue may
take a personnel action other than termination for an act or
omission under subsection (a).

## ADMITTED ALLEGATIONS PROVIDE MORE EVIDENCE OF UNCLEAN HANDS

Among the allegations admitted by defendant's failure to deny/motion to dismiss is

that no proper assessment has been made for any year in question, i.e., that no document

signed by a duly appointed Assessment Officer exists.   On the basis of information

contained in the Internal Revenue Manual, Plaintiff(s) has/have identified this document

as a Form 23C.  As discussed by the defendant in March v. Internal Revenue Service --

335 F.3d 1186 (2003):

> "[R]egardless of the form used, the IRS must comply with the regulations governing
> the assessment process. The purpose of these regulations is to ensure both the
> efficiency and the accuracy of the assessment process. The signature requirement
> in 26 C.F.R. § 301.6203-1 appears to serve multiple purposes. The requirement
> ensures that an assessment officer reviews the assessment before it is sent to the
> taxpayer, and the placing of the officer's signature establishes an effective date of
> the assessment that is relevant for certain timing requirements.

> In discussing how IRS circumvents the legal requirement, the March Court said:

> "In reality, the courts have created a legal fiction in which the submission of Form
> 4340, which lists a "23C Date," creates a presumption that a Form 23C was signed.
> While the courts have said that this presumption is rebuttable by the taxpayer, the
> IRS concedes that "when the Debtors argue that the 23C Forms were Never
> produced, it is because they probably do not physically exist." Aple. Br. at 15 n.2.
> In other words, the IRS gets the benefit of a presumption that they admit is likely
> false."

The Court will take Judicial Notice that the Form 4340 "which lists a '23C Date,'"

(sic) certifies only that IRS computer records reflect certain data; it does not certify the

accuracy of that data. In order to be admissible in evidence, the accuracy of the data must

be ascertained, and the defendant's counsel knows this.  See:  Brief on Admissibility of

Computer Evidence, attached.

Lastly, counsel for the United States is well aware that "[U]nder the Administrative

Procedure Act, 5 U.S.C. 704, a person aggrieved by an agency action can seek judicial review of the action without exhausting an available administrative appeal, unless the agency's regulations provide both (1) that the administrative appeal must be taken, and (2) that during the pendency of the administrative appeal the agency action shall be inoperative."   Darby v. Cisneros, 509 U.S. 137 (1993), quoted in the U.S. Attorney's Manual, Civil Resource Manual, Title 4.

The filing of an administrative claim under regulation 301.7433-1 fails to meet the second prong of 5 U.S.C. 704, as recognized in Darby, and as counsel well knows.

### SUMMARY

The right to file a civil suit for damages was intended to protect taxpayers from an out of control agency. The administrative remedies provision was intended to facilitate that right. Paraphrasing Pacific Tel. & Tel. Co. v. Public Util. Comm'n, 443 U.S. 1301 (1979):

> Here, the administrative action [the regulation] was the source of the claimed wrong, not a possible avenue for its redress.

Plaintiff(s) respectfully request(s) the Court exercise its equitable powers; find that Congress should not have re-imposed the exhaustion provision. That many plaintiffs bring their actions to federal court under section 7433 because they do not trust the IRS to seriously consider their claims. That most pro se plaintiffs do not understand the meaning of exhaustion of administrative remedies. That plaintiff(s) should not be penalized by their good-faith ignorance; instead, federal courts should hear their claims if valid. In addition, find that few pro se plaintiffs have actual notice of the process established by Treasury Regulation section 301.7433-1. That Congress and the court should understand many people's distrust of the ability of the IRS to proceed with their claims, find that

administrative remedies are inadequate, futile, or have otherwise been exhausted, and deny defendants' motion to dismiss or in the alternative and issue a stay in these proceedings and grant plaintiff(s) time to exhaust administrative remedies.

Dated: April 11, 2006

David Stinecipher
214 E Parker
Carlsbad, NM 88220

Debra Stinecipher
214 E Parker
Carlsbad, NM 88220

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on defendants' attorney at his/her address of record.

Dated 4-11, 2006

David Stinecipher

# United States District Court
## IN THE DISTRICT OF COLUMBIA

David Stinecipher,
Debra Stinecipher,

                         Case No. 1:05cv02434

         Plaintiff(s),

v.

United States
          Defendant.

### OBJECTION AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS

### I
### INTRODUCTION

1.    Plaintiff hereby alleges that defendant's Motion to Dismiss is brought for improper purposes of delay, is unwarranted by existing law, and is frivolous, lacking any good faith argument for an extension, modification or reversal of existing law and insults the intelligence of this court and the plaintiff.

2.    Counsel's Motion to Dismiss illustrates Counsel's misreading, misunderstanding, mischaracterization and misrepresentation of facts before the Court.

3.    Counsel seeks to vacate on the basis of non-existent grounds, and to perpetrate a fraud upon the Court.

### II

### MOTION'S "EXHAUSTION" GROUNDS MISREPRESENT LAW

5.    Counsel knows, or should know, that exhaustion of administrative remedies, first

imposed in the 1988 Taxpayer Bill of Rights as a jurisdictional pre-requisite, was removed by the Taxpayer Bill of Rights II in 1996. Although exhaustion was reinstated in Public Law 105-206, the IRS Restructuring and Reform Act of 1998, it was reinstated solely with respect to award of judgment - not jurisdiction.

6.    Counsel's attempt to avoid subject matter jurisdiction by misrepresenting the "exhaustion" requirement is unwarranted by existing law, and fails to present a good faith basis for extension, modification or reversal of existing law. The Court has subject matter jurisdiction of suits brought under Internal Revenue Code section 7433, and may make findings of fact as to exhaustion for purposes of a later award. Sanctions under Fed.R.Civ.P 11(b) should be imposed (See Brief on Exhaustion of Administrative Remedies Filed concurrently with this Response).

7.    Counsel's attempt to avoid subject matter jurisdiction by misrepresenting the "exhaustion" requirement potentially violates District Ethics Rule 3.1 Meritorious Claims and Contentions.   The Rule prohibits attorneys from raising frivolous, bad faith issues:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

8.    The Committee comments to E.R. 3.1 explain:

> [1] *The advocate has a duty* to use legal procedure for the fullest benefit of the client's cause, but also a duty *not to abuse legal procedure*. The law, both procedural and substantive, establishes the limits within which an advocate may proceed.
> [2] *** *What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine* that they can make good faith arguments in support of their clients' positions.

*** The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.

9.  Counsel's attempt to avoid subject matter jurisdiction by misrepresenting the

"exhaustion" requirement clearly shows that Counsel failed the obligations of E.R.

3.1, as interpreted by the Committee comments.

10.  Counsel's attempt to avoid subject matter jurisdiction by misrepresenting the

"exhaustion" requirement violates Ethical Rule 3.3 Candor Toward the Tribunal. The

Rule is crystal clear:

(a) A lawyer shall not *knowingly*:
(1) *make a false statement of fact or law* to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
(2) fail to disclose to the tribunal *legal authority* in the controlling jurisdiction *known to the lawyer to be directly adverse to the position of the client* and not disclosed by opposing counsel; or
(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

11.  Counsel's attempt to avoid subject matter jurisdiction by misrepresenting the

"exhaustion" requirement clearly shows that Counsel failed the obligations of E.R.

3.3, as interpreted by the Committee comments.

lll

## MOTION'S ATTACHMENT ILLUSTRATES FUTILITY OF FURTHER "EXHAUSTION"

12.   Counsel's Motion to Dismiss is intended to conceal the fact that IRS has not and

cannot produce a properly executed summary record of assessment. This intent is

inferred by the fact that Counsel knows, or should know, that his/her client has

admitted, in other actions, a pattern of failure to properly execute summary record(s)

of assessment, to wit:

A.    In March v. Internal Revenue Service   (10th Cir.) 02-2087, decided

02/25/2003, McKay, Circuit Judge, observed:

> "[T]he IRS concedes that "when the Debtors argue that the 23C
> Forms were never produced, it is because they probably do not
> physically exist." Aple. Br. at 15 n.2. In other words, the IRS gets the
> benefit of a presumption that they admit is likely false."

13.   Two decisions of the 9th circuit court of appeals are pertinent in their teachings and

applicability here. Huff v United States, 10 F3d 1440 (9th Cir. 1993) and Mulvania

v U.S. 214 BR (9th Cir 1997). Each of these 9th Cir decisions make it clear that in

order to properly discharge his statutory obligation under 26 USC 6203 of the IRS

Code and Sec. 301.6203-1 of the Treasury Regulations, the Commissioner must

issue to the requesting tax payer a summary record of assessment (form 23C)

signed by a duly appointed assessment officer in order to properly validate an

assessment of a tax.

Although plaintiff(s) has/have made demand upon the Commissioner these

documents have not been issued to plaintiff(s).

In addition plaintiff(s) would emphasize to the Court that the decision in Huff and

Mulvania (supra) also make it abundantly clear that when the question of a properly validated assessment of tax is raised by a taxpayer an important question of fact is presented to the court which may not be cavalierly brushed aside by way of a Rule 12(b)(6) motion to dismiss or by way of summary judgement. Absent an assessment, NO TAX EXISTS. Rosenman v. Commissioner, 323 US 658 (1945) (a tax does not exist absent an assessment)

14.     By seeking to dismiss on the basis of misreading, misunderstanding mischaracterization, and misrepresentation, Counsel assists his/her client in concealing evidence. By seeking to vacate on the grounds set forth in counsels motion council disregards an important question of fact and seeks the benefit of a presumption that council's client admits is likely false.

15.     Counsel's filing constitutes Ethical Rule 8.4 Misconduct:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or

(f) knowingly assist a judge or judicial officer in conduct that is a violation of

applicable rules of judicial conduct or other law.

16. Counsel was, as are all applicants to the BAR, required to sign an oath, pursuant to

Title 28 United States Code, Appendix, Rules of the Supreme Court, PART II.

### ATTORNEYS AND COUNSELORS

Rule 5.

4. Each applicant shall sign the following oath or affirmation:
I, ..............., do solemnly swear (or affirm) that as an attorney and as a counselor of this Court, I will conduct myself uprightly and according to law, and that I will support the Constitution of the United States.

17.    Counsel has breached that oath.

18.    Plaintiff(s) withdraws his/her/their request for injunctive relief and for a refund of

taxes and seeks only damages pursuant to 26 U. S. C. §7433.

WHEREFORE, Plaintiff(s) request(s) the Court strike/deny defendants' motion to

dismiss.

Dated: April 11 , 2006


David Stinecipher
214 E Parker
Carlsbad, NM 88220

Debra Stinecipher
214 E Parker
Carlsbad, NM 88220

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the forgoing on defendant's attorney at his/her address of record.

Dated _April 11_____, 2006

_David Stinecipher_
David Stinecipher

RECEIVED

APR 1 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT